CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 30 2014

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHNNY L. GARCIA,<br>Plaintiff, | ) )<br>) | Civil Action No. 7:13cv00585 |
| v. | ) )<br>) | **MEMORANDUM OPINION** |
| GEORGE HINKLE, *et al.*,<br>Defendants. | ) )<br>) | By: Samuel G. Wilson<br>United States District Judge |

Johnny L. Garcia, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983 alleging officials at two state prisons violated his constitutional rights by suspending the visitation privileges of his fiancée, Tammy Hall, for which he seeks injunctive relief and court costs. The defendants have moved for summary judgment, explaining the security concerns that prompted Hall's visitation suspension. Because prison officials have restored Hall's visitation privileges, Hall's suspension occurred under circumstances not likely to recur, and Garcia has not requested damages, his claims are moot. The court will accordingly grant the defendants' motion.

I.

Garcia's complaint alleges the defendants violated his due process and equal protection rights by denying him visitation with his fiancée, Tammy Hall, for "2 years without any supporting evidence of any wrong doing" and without leveling "any institutional charges." (Compl. at 2-3.) Based on those allegations, Garcia requests that his visitation privileges with Hall be restored and that the defendants reimburse him for the cost of filing this action. (Id.) The defendants moved for summary judgment, with supporting exhibits and affidavits setting forth the sequence of events that led to Hall's visitation suspension. Garcia responded with an affidavit from Hall. The court then directed the defendants to respond with information related

to the particular investigative findings and details that led to the suspension. The uncontroverted facts are as follows.[1]

In July 2011, while incarcerated at Patrick Henry Correctional Unit # 28 (PHCU), Garcia received an institutional charge for possessing tobacco. (Aff. Kanode at 2.) Several months later, PHCU officials conducted an "intensive interdiction operation" that included searching for contraband in the vehicles of persons visiting PHCU. (Id. at 1-2.) Hall, who intended to visit Garcia that day, drove away from PHCU and officials did not search her vehicle. (Id.) Later, Hall received a letter from the PHCU Warden, Barry Kanode, notifying her that her visitation privileges would be suspended for 30 days pending the outcome of the investigation. (Id. at 2.) After that time lapsed, Hall's visitation privileges were restored for approximately one month, during which time PHCU and the Special Investigations Unit (SIU) of the Virginia Department of Corrections (VDOC) pursued an investigation related to the influx of unauthorized tobacco products. (Aff. O'Der at 1-2.) The investigation purportedly revealed that Hall purchased tobacco to be smuggled into PHCU, and Hall allegedly admitted her involvement in a signed statement.[2] (Id. at 2-3.) Statements from three other persons allegedly corroborated her involvement. (Id.) Based on those investigative findings, PHCU officials suspended Hall's

---

[1] Garcia previously filed a 5,000 word complaint and numerous documents alleging this and various other claims. Garcia v. Hinkle, No. 7:13cv00080 (W.D. Va. July 22, 2013) (dismissed without prejudice). Unable to discern any viable constitutional claims, the court dismissed that action without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Id.

[2] The investigation allegedly revealed that Hall purchased tobacco and delivered it to Cathy Belcher (wife of Mike Belcher, one of the inmates under investigation) and another woman, who brought the tobacco to Green Rock Correctional Center where "offender laborers" retrieved it and brought it into PHCU. (Aff. O'Der at 2.) Hall admitted in a signed statement: "I have previously delivered two bag pouch bags of loose tobacco to Cathy Belcher and a woman named Deb . . . I bought the tobacco for Mike Belcher . . . Cathy and Deb took the tobacco to Green Rock Prison and someone got the tobacco to Mike Belcher . . . I swear that what I delivered to Cathy that Belcher later received was tobacco not marijua [sic] or anything else . . . I only delivered tobacco on this one occurrence." (Exhibit C, ECF 23-1.)

2

visitation privileges pursuant to VDOC Operating Procedure (OP) 851.1, IV, L, 2, d, I, which requires "a visitor's privilege to visit shall be banned if . . . the visitor smuggles, conspires to smuggle, or attempts to smuggle any item in or out of the facility." (Exhibit D, ECF 17-1.)[3]

VDOC later transferred Garcia to Bland Correctional Center (BCC), and the Warden there, Larry Jarvis, advised Hall that her visitation privileges would remain suspended. (Aff. Jarvis at 1-2.) Garcia filed a grievance, and Jarvis responded. (Id.) According to Jarvis' response, Jarvis had "reviewed the matter" and concluded that Hall's visiting privileges should not be restored because "[he] did not feel it was in the best interest of the institution to do so." (Id. at 5.) Both Kanode and Jarvis cite security concerns as their reason for suspending Hall's visitation privileges. (Aff. Kanode at 2; Aff. Jarvis at 2.) BCC prison officials reinstated Hall's visitation privileges on April 23, 2014. (Aff. Zook at 1-3.)

II.

Garcia maintains the defendants violated his due process and equal protection rights by suspending Hall's visitation privileges for two years without evidence of wrongdoing or an institutional charge, and he requests injunctive relief and court costs.[4] Prison officials have since restored Hall's visitation privileges. Because Garcia's claims are now moot and Hall's

---

[3] Garcia was nonetheless permitted to send and receive correspondence and communicate by telephone with Ms. Hall. (Aff. Jarvis at 2.)

[4] The defendants argue Garcia lacks Article III standing because his claims involve the suspension of Hall's visitation privileges and not his own. This argument is hard to square with various cases in which courts have considered an inmate's claims challenging the suspension of his visitor's privileges. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (deciding § 1983 class action challenging visitor suspension policy); Meadows v. Dodrill, 872 F.2d 418 (4th Cir. 1989) (unpublished opinion) (affirming district court's dismissal of inmate's claim that his ex-wife was wrongfully denied visitation privileges for security reasons); Rackley v. Blevins, 2014 WL 2519313 (W.D. Okla. May 13, 2014) (accord).

3

suspension resulted from an investigative finding that she presented a security concern, the court will grant the defendants' summary judgment motion.[5]

Article III requires that federal courts only adjudicate disputes presenting "ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). A suit must not only be "alive" when filed, the litigants must also maintain a "particularized, concrete stake" in the outcome. Id. at 477-79. Mootness deprives the court of jurisdiction to decide a case. Id. at 477. A case becomes moot when "the parties lack a legally cognizable interest in the outcome," Powell v. McCormack, 395 U.S. 486, 496 (1969), which typically happens when "an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff." Williams v. Ozmint, 716 F.3d 801, 809 (4th Cir. 2013) (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)). The court can offer no effectual relief when, for example, "the claimant receives the relief he or she sought to obtain through the claim." Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002). An exception to mootness exists when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Lux v. Judd, 651 F.3d 396, 401 (4th Cir. 2011) (quoting Fed. Election Comm'n v. Wisc. Right to Life, Inc., 551 U.S. 449, 462 (2007)). But this exception is narrow, applicable only in "exceptional situation[s]," Los Angeles v. Lyons, 461 U.S. 95, 109 (1983), and the party seeking to invoke it is burdened with demonstrating its applicability. Incumaa v. Ozmint, 507 F.3d 281, 286 (4th Cir. 2007).

---

[5] A court should grant summary judgment when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact is in dispute, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

With those precepts in mind, the court concludes that Garcia's claims are moot. The court can offer no effectual relief to Garcia; he has requested injunctive relief as his sole remedy, and prison officials have already restored Hall's visitation privileges. See Williams, 716 F.3d at 809 (holding inmate's claim for injunctive relief was moot when prison officials restored his visitation privileges); Martin v. Snyder, 329 F.3d 919, 920 (7th Cir. 2003) (same); White v. Keller, 438 F. Supp. 110, 113 (D. Md. 1977) ("The claims for injunctive relief of the named plaintiffs in the visitor class are and have been moot since the restoration of their visiting privileges."), aff'd, 588 F.2d 913 (4th Cir. 1978). Garcia argues that his claims are not moot because he seeks court costs. The Supreme Court, however, has warned lower courts "to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncement on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." Lewis, 494 U.S at 480 (noting "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"). Court costs are, in the Supreme Court's words, "sunk costs," and Garcia's request for them cannot resuscitate his underlying claims. See Loeh v. Commandant, United States Disciplinary Barracks, 2004 WL 1490403, at *1 (D. Kan. June 30, 2004).

Seeking application of the mootness exception, Garcia argues that "a favorable ruling by this court would grant relief by deterring the defendants from re-suspending Tammy Hall's visits." (Pl. Resp. at 4.) But the court is "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," Spencer v. Kemna, 523 U.S. 1, 18 (1998), and generally courts should decline to apply the mootness exception when the institution's action was not arbitrary, but instead based on a finding of culpable conduct. See Williams, 716 F.3d at 810 (refusing to invoke mootness exception regarding visitation privileges

5

where "there is nothing in the record to indicate that [the inmate's] visitation privileges will be suspended again in the absence of culpable conduct on his part"); Incumaa, 507 F.3d at 289 (declining to invoke mootness exception where "[t]here is no evidence in the record that the [institution] arbitrarily places inmates in the [Maximum Security Unit (MSU)]"); Cox v. McCarthy, 829 F.2d 800, 804 n.3 (9th Cir. 1987) (concluding mootness exception was inapplicable "when the possibility of recurrence for the plaintiff depends on his own wrongdoing"). Upholding a two-year suspension of visitation privileges, the Supreme Court has stated: "[w]e must accord substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Here, Garcia marshals nothing to indicate that Hall's visitation privileges were suspended arbitrarily, and the court is not at liberty to assume the prison administrator's role by determining whether Hall actually participated in the tobacco smuggling scheme. Because it is apparent that Hall's visitation privileges were not arbitrarily suspended, Garcia's argument that these circumstances may recur rests on mere speculation and thus falls outside the scope of the mootness exception. The court will accordingly grant the defendants' summary judgment motion.[6]

---

[6] In any event, the existence of a plausible constitutional violation here is far from clear. As for his due process claim, Garcia has no right to visitation arising from the Due Process Clause itself, Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989) ("[t]he denial of prison access to a particular visitor . . . is not independently protected by the Due Process Clause"), and Garcia would be unable to make the threshold showing that Sandin v. Conner requires (an "atypical and significant hardship") in order to rely on VDOC's OP 851.1, IV, L, 2, d, I as a state-created liberty interest. 515 U.S. 472, 484, 487 (1995); see also Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (holding that a two-year suspension of visitation privileges was not a "dramatic departure from accepted standards for conditions of confinement"). And Garcia's claim fares no better even if he could show he was deprived of a liberty interest because the suspended visitation privilege was limited solely to Hall, not a permanent withdrawal of all visitation; he was free to communicate with Hall by mail or phone; he was afforded use of the grievance process; and Hall's suspension followed a legitimate investigative finding that she was

6

III.

For these reasons, the court will grant the defendants' motion for summary judgment.

**ENTER**: July 30, 2014.

_/s/_

UNITED STATES DISTRICT JUDGE

---

involved in the smuggling scheme. Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (holding that a finding of an infringement on one's liberty interest requires the court to balance the plaintiff's private interests, the government's interest, and the value of the procedures afforded to the plaintiff). As for Garcia's equal protection claim, he marshals nothing to show that he was treated differently from similarly situated persons, nor has he alleged facts even remotely suggesting that Hall's visitation suspension was based on racially discriminatory motives. There is no doubt that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." Overton, 539 U.S. at 134. As the Fourth Circuit has noted, "[v]isitation is a privilege and not a constitutional right." Wright v. Vitale, No. 91-7539, 1991 WL 127597, at *1 (4th Cir. July 16, 1991).

7